**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **LARRY JAMES RAINEY,** § | | |
| **TDCJ #560039,** § | | |
| Petitioner § | | |
| § | | |
| v. § | | **Civil No. 7:12-CV-190-O-KA** |
| § | | |
| **DIRECTOR TDCJ-CID** § | | |
| Respondent. § | | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION**

Petitioner Larry James Rainey is incarcerated at the James V. Allred Unit of the Texas Department of Corrections in Iowa Park, Texas pursuant to a twenty-five year sentence from two judgements of conviction. Rainey is not challenging the validity of the convictions under which he is being retained in custody. Rather, Rainey brings this habeas corpus case under 42 U.S.C. § 2254 challenging a prison disciplinary proceeding that resulted in the forfeiture of good-time credit and a few other restrictions that would result in his being imprisoned beyond his mandatory supervision commencement date. This matter was referred to the undersigned for review, hearing, if necessary, findings of fact, conclusions of law, and recommendation.[1]

Procedural History

On February 23, 2012, at 4:45 a.m., Rainey was notified that he was being charged with threatening to inflict harm on staff, a code 4.0 violation of the Disciplinary Rules and Procedures for Offenders. The disciplinary hearing was held on February 28, 2012. He pleaded not guilty but

---

[1] Order of Reference, Docket No. 20.

1

was found guilty and was given the following sanctions: (1) forfeiture of 45 days of recreation and commissary privileges, (2) placed in solitary for 15 days, (3) reduction in line class from S3 to L1, and (4) forfeiture of 365 days of good time credit. On March 2, 2012, Rainey submitted a Step 1 Grievance, initiating grievance case number 2012113082. The grievance was denied on March 15, 2012. On March 22, 2012, Rainey submitted a Step 2 Grievance appealing the outcome of the correlative Step 1 grievance. The Step 2 Grievance was denied on May 2, 2012. Thereafter, Rainey filed his petition in this case on October 23, 2012.[2]

Respondent acknowledges that Rainey has exhausted his state remedies and that the petition is not barred by limitations or subject to the successive petition bar.[3] Rainey is entitled to release on mandatory supervision.[4]

### Rainey's Claims

Rainey challenges his disciplinary conviction on the grounds that (1) that several correctional officers used false documents in a conspiracy to fabricate a disciplinary case against him;[5] (2) that there was insufficient evidence to convict him of the disciplinary offense; (3) that he did not receive

---

[2] With Respondent's Response (Docket No. 21), the Respondent filed the Administrative Record (Docket No. 24) consisting of Rainey's Disciplinary Grievance Record (DGR), the Disciplinary Hearing Record (DHR), and an audio disc containing the Disciplinary Hearing Tape (DHT).

[3] The named Respondent is William Stephens, the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice (hereafter referred to as "Director."

[4] Director's Response, p.7.

[5] Petition, Docket No. 3, p.6.

2

*due process* since the disciplinary hearing officer refused to call a witness that Rainey requested[6] and denied Rainey the opportunity to cross-examine the charging officer.[7]

### Director's Response

The Director responds to Rainey's claims that with respect to the loss of commissary privileges, recreation privileges, and his assignment to solitary confinement, which were elements of Rainey's punishment for the disciplinary violation, the Due Process Clause of the Fourteenth Amendment is not implicated. The forfeiture of these specific privileges do not impose an "atypical" or "significant hardship" beyond "the ordinary incidents of prison life." Rather, they constitute mere changes in the conditions of his confinement, and therefore, do not implicate the protections afforded by the Due Process Clause.[8] As to the reduction in Rainey's line class status from G-2 to G-4 that affected his ability to earn good-time credits in the future, the Director argues that the reduction did not implicate the Due Process Clause protections.[9] As to the forfeiture of 365 days of earned good-time credit, the Director, while recognizing that such loss raises a cognizable

---

[6] *Id*. p.7.

[7] *Id.*

[8] *Sandlin v. Connor*, 515 U.S. 472, 486 (1995) (assignment to solitary confinement did not effect the duration of the sentence); *Madison v. Parker*, 104 F. 3d 765, 768 (5th Cir. 1996) (limitations on commissary or recreational privileges, cell restrictions are not atypical or significant hardship); *Hinojosa v. Thaler*, 427 Fed. Appx. 354 (5th Cir. 2011) (commissary and cell restrictions do not implicate due process concerns and a reduction in classification on a prisoner's ability to earn good-time credits is too speculative to constitute a deprivation of a protected liberty interest).

[9] *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995)(placement in Administrative Segregation that affects the ability to earn future good-time credits did not implicate a protected liberty interest); *Milchi v. Thaler*, 211 F. 3d 953, 956 (5th Cir. 2000) There is no constitutionally cognizable claim to the 'right' to a particular time-earning status). See also, *Thomas v. Quarterman*, 272 Fed. Appx. 406 (5th Cir. 2008).

claim, asserts that Rainey was afforded the requisite due process. While Rainey asserts that he was denied due process by the hearing officer's refusal to call Rainey's requested witness, the Director asserts that Rainey never proved up his claim by alleging or demonstrating what testimony the witness would have given that would have changed the outcome of the disciplinary case that is supported by sufficient evidence.

With respect to Rainey's loss of commissary privileges, recreation privileges, and his assignment to solitary confinement, the Director is correct. I conclude that these elements of punishment as a result of Rainey's disciplinary hearing do not implicate the Due Process Clause protections. And since the period of their duration has passed, their enforcement is now moot.

### Forfeiture of Good-Time Credit

However, Rainey also lost 365 days of previously earned good-time credit as a result of his disciplinary conviction. When a state creates a right to early release for good conduct, and recognizes its revocation as an authorized sanction for misconduct, "a prisoner's interest therein is embraced within the Fourteenth Amendment 'liberty' concerns so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that this state-created right is not arbitrarily abrogated." *Madison*, 104 F.3d at 768 (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Because Rainey is eligible for mandatory supervision, he had a protected liberty interest in his previously earned good-time credits. See *Teague v. Quarterman*, 482 F.3d 769 (5th Cir. 2007) at 775-76 (citing *Malchi*, 211 F.3d at 956). Therefore, the revocation of those credits must comply with the minimum procedural protections required under the circumstances. See *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985).

4

In *Wolff*, the Supreme Court considered the minimum level of due process required in the prison disciplinary context, recognizing that prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." 418 U.S. at 561. Because prison disciplinary hearings are "not part of a criminal prosecution," the Court reasoned that "the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 556. The minimum procedural due process required for prison inmates under these circumstances includes: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; and (3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action. *Id*. at 563-67. Rainey does not complain that he did not receive advance written notice or a written statement of the fact findings; moreover, the disciplinary hearing records and the audio recording of the hearing show that these two procedural requirements of due notice and making of written findings were met.[10] Rather, Rainey complains that his disciplinary conviction violates due process because the hearing examiner did not call Rainey's requested "crucial"[11] and "pertinent"[12] witness, Ms. Logan, a prison psychologist,[13] whom Rainey alleged "was present and observed the

---

[10] Exhibits A and B of Administrative Record, Docket No. 24.

[11] Petition, p.6.

[12] *Id*. p.7.

[13] DGR p. 1, line 8.

5

incident"[14] during which she "never heard me make any threats referring to anyone."[15] Rainey further asserts that the hearing officer denied him the opportunity to cross-examine the complaining correctional officer.

## Conspiracy Claim

Apart from his bare allegation of a conspiracy among correctional officers involved in his disciplinary hearing, Rainey has neither alleged nor shown any facts whatsoever to support this bare claim. Accordingly, it must be denied.

## Sufficiency of the Evidence

As summarized in the recent case of Decker v. Stephens:[16]

> "Federal habeas review of the sufficiency of the evidence supporting a disciplinary conviction is extremely limited. Due process requires only "some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457. The Supreme Court has determined that "[a]scertaining whether [the sufficiency-of-evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455. "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." Hudson v. Johnson, 242 F.3d 534, 536-537 (5th Cir. 2001). The information provided in a written incident report standing alone can satisfy the "some evidence" standard. Id. at 537. "Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision." Broussard v. Johnson, 253 F.3d 874, 877 (5th Cir. 2001). Therefore, when reviewing a prison disciplinary decision, "the standard to be applied is whether or not actions of the disciplinary committee were arbitrary or capricious or an abuse of discretion." Smith v. Rabalais, 659 F.2d 539, 543 (5th Cir. 1981)."

Furthermore, in measuring the degree of evidentiary support of a prison disciplinary decision the

---

[14] Step 2 Grievance attached to Petition, p. 1, lines 2-3

[15] *Id*. lines 3-4.

[16] 2014 U.S. Dist. LEXIS 20094, at pp.10-11.

Supreme Court in *Superintendent v. Hill*, *supra*, stated that "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing. Although the evidence in this case might be characterized as meager, and there was no direct evidence ..[on a critical element of the offense charged]..., the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."

## The Evidence of a Threat

Sergeant C. Crase is the corrections officer who initiated the disciplinary action against Rainey by filing an offense report charging that Rainey violated Code 4.0 of the Disciplinary Code by "threatening to inflict harm on staff" and alleging that Rainey threatened to inflict harm on any staff member by stating "If I don't get a break I <u>might hurt</u> someone. Everyone else gets a break and I need my coffee or I <u>will hurt</u> someone here."[17] At the disciplinary hearing, Crase testified that while Rainey was standing in front of him almost to A&B hallway in building 12 he clearly heard Rainey say that "if he don't get his coffee break he <u>felt like</u> he <u>would hurt</u> somebody."(emphasis supplied). Later in his testimony, the officer said that Rainey said that "if he didn't get his break he <u>felt like</u> he's <u>going to hurt</u> someone."(emphasis supplied). He further related that he was close to Rainey when the statement was made, that there were no other prisoners in the way, and that the noise level at that lunch hour did not interfere with his hearing the statement. He further responded to counsel substitute that he took the statement seriously.

Code 4.0 of the Disciplinary Rules and Procedures for Offenders proscribes "threatening to

---

[17]   DHR, p.3.

7

inflict harm" not only to an officer but also to "any person who is not an offender."[18] On its face this testimony alone, corroborating the essence of his written offense report that was admitted at the commencement of the disciplinary hearing, would be sufficient in and of itself to support the hearing officer's finding that Rainey was guilty of making a threat of harm against someone. In the context of the encounter in the hallway after Rainey was denied his requested "break," his statement could reasonably appears to have been directed toward an officer, or at least toward "someone other than an offender." Therefore, on the face of the written disciplinary record, the District Court could reasonably find that there is "some evidence" to support the conclusion of the hearing officer that Rainey was guilty of the offense charged that supported a forfeiture of 365 days of good time.

But the face of the written record is stained by the audio tape recording of the hearing itself. A close listening to the tape discloses much about the character of the hearing, the character of the testimony and the factual basis for Rainey's claims about the denial of a witness and the limitation of his cross-examination of the complaining officer.

### Character of the Hearing

It is the character of the hearing itself as reflected in the audio tape of the proceeding that is worrisome.[19] While the hearing officer serves to develop the record both for the state and for the accused, since the officer has decision-making capacity as well, one would expect a more tempered demeanor from the hearing officer than was reflected on the recording. The whole intimidating demeanor of the hearing officer is reflected in the opening minutes of the proceeding in the inflection of the hearing officer's voice and machine gun pattern of the hearing officer's comments.

---

[18]   Attachment B to Director's Answer, Docket No. 21, p.8.

[19]   DHT

A typewritten record of <u>what</u> was said does not reflect <u>how</u> it was said. Nor does it reflect the full context in which the hearing participants' own verbal statements and actions were made or taken. But it does reflect the effect of the hearing officer's demeanor on the participants, Rainey, his Counsel Substitute, and witness Sgt. Crase. And it is that context that concerns this court. A "hearing" requires some degree of equanimity of the presiding officer and that was missing in this case. The officer clearly wanted to get the matter over quickly. He already had the punishment determined before he even heard the testimony and he cut off Rainey's attempt to show controverting evidence at every opportunity.

Limitation of Cross-Examination of Witness

After Sergeant Crase had responded to the hearing officer's questions, the hearing officer did afford Rainey the opportunity to ask him certain questions. Rainey asked the hearing officer to ask Crase <u>where</u> Crase was standing when Rainey made the alleged statement. The hearing officer repeated that inquiry to Crase. Crase replied that he was almost in the A & B hallway of 12 Building. The hearing officer then conducted his own leading examination of Crase to confirm Crase' proximity to Rainey when the statement was made, the non-interference by the presence of other inmates, and the noise level in the hallway. Then, being satisfied with Crase's testimony, the hearing officer gave Rainey a second opportunity to ask Crase another question. Rainey asked, "Did he see me talking to Captain Miller?" To this question relayed by the hearing officer Crase replied vaguely that "No, Um, Miss Ballard asked me about that and (uh) I don't recall him talking to the (I think it was Lieutenant and Captain) that he was allegedly claiming (I guess) at the time that Miss Ballard said, but if it was prior, I.. I don't know that. So." Rainey attempted to ask a follow up question whether Crase was in the hallway when Rainey was talking to Captain Miller. But the hearing

9

officer refused to relay that question to the witness saying that the question had already been answered by Crase that "He don't know where he was at when your were talking to Captain Miller. He has already answered that question." The hearing officer again asked Rainey if he had any other questions, to which Rainey posed the question "I'd like to know why he is lying on me." The hearing officer ruled this third question was retaliatory in nature and would not be asked of the complaining witness. Then the hearing officer proceeded to make his verbal findings that the first question was "Asked, and answered" and that the latter question was "retaliatory and argumentative and closed the hearing the first time. Later in the hearing Rainey's Counsel-Substitute made exception to this ruling and to the hearing officer's denial of the psychologist witness.

I find that while the hearing officer interfered with Rainey's cross-examination of the complaining witness by ruling that the question had already been answered he did not deny Rainey the opportunity to cross-examine the witness further. Rainey just did not.

### "Threat" or Not.

First, whether spoken words constitute a "threat" or not depends upon the context in which they are spoken. As to Rainey's alleged statement, there was no testimony as to the context in which the words used by Rainey in his statement were made. That context could have shown that the statement was belligerent or bellicose. Or that it was accompanied by a stance or action indicating that harm may be immanent. Or it could have been shown to be a mere vocal sign of Rainey's frustration at not getting a perceived deserved break and not a real threat at all. Indeed Crase's very phrasing of the words used as a "threat" changed from the offense report when compared to his actual testimony. There was no description of Rainey's body stance or position or movements before, during or after he stated the words. It is this very context that the testimony of the

10

psychologist witness that Rainey sought to testify might have provided since Rainey claims she was present and heard his prior conversation with Captain Miller. Code 4.0 of the Disciplinary Rules and Procedures for Offenders proscribes "threatening to inflict harm" not only to an officer but also to "any person who is not an offender." Miller's written statement[20] does reflect that Rainey did ask him about a coffee break and that Miller told him to "go through the chain of command." And that is the gist of Rainey's claim that he was denied due process by the refusal of the hearing officer to call the psychologist as a witness, a witness who might have been able to provide the context for Rainey's later statement to Crase.

Second, the hearing officer interviewed Crase on the record by leading questions designed to have him confirm his prior offense report that depended upon the words used by Rainey in his statement, i.e. that he "might" or that he "will" hurt somebody. Then, when Crase testified of the events his own words, as indicated above, those words varied significantly from the words he used on the offense report, ie. that he "felt like he would" or he "felt like he might" hurt somebody. When the hearing officer allowed Rainey to ask Crase a follow-up question, he limited Rainey's cross-examination of Crase by cutting him off from exploring Crase's understanding of what transpired between Rainey and Miller, once again, effectively preventing any testimony as to context of Rainey's statement. Then after a break off the record, he denied Rainey's request for the psychologist to testify, ruling that the testimony would have been <u>hearsay</u>.

<u>Refusal to Call Witness</u>

Near the beginning of the disciplinary hearing, the hearing officer J. C. Boyle, asked Rainey if he had any documents or witnesses he wanted to present. Rainey replied that he would like to call

---

[20] Attachment B, Docket No. 21, p.9

11

"the person who he had heard my conversation with (Captain Miller) and the "psychologist." After Rainey identified these two witnesses, his Counsel Substitute offered written statements taken by a Miss Ballard from two witnesses, one of whom was Captain Miller and the other was from Lieutenant Klusmeyer, both of which were characterized by Counsel Substitute as "not beneficial to the defendant."  Immediately following the admission of these written statements for the record, the hearing officer placed the telephone call to the complaining officer, Sgt. Crase and interviewed him at length over the phone. Then he allowed Rainey to ask Crase several questions.  Immediately, after Rainey's truncated cross-examination of Sgt. Crase and Rainey's re-assertion that he never threatened anyone, the hearing officer can be heard to rapidly recite his findings and recessed the hearing the first time. Then-- **after the apparent break in the recording**-- the hearing officer starts up the recording again to address the issue of the psychologist as a witness.  He asks Rainey to tell him what the psychologist would testify to.  Rainey can then be heard to mention that the psychologist heard him speaking to another officer, one Captain Miller, about the denial of a coffee break and this was the conversation that Rainey alluded was overheard by the psychologist.  In response to Rainey's mention of the psychologist as a potential witness to that conversation, the hearing officer can be heard saying, "The psychologist is going to be denied. That's not necessary testimony, <u>it will be hearsay</u>." Then again, in a rapid fire manner, the hearing officer rapidly recited his findings, assessed the punishment, and for a second time recessed the hearing.

     The Director forcefully asserts that Rainey cannot show that he was prejudiced by the absence of the witness because Rainey wholly failed to allege or prove what the uncalled witness would have testified to had the witness been called to testify.  That is the very problem caused by the hearing officer's refusal to call the witness to testify.   Who knows what the uncalled witness

12

heard or did not hear, what the uncalled witness would have said or not said regarding Rainey's statement, or if the witness could shed any light on the context in which Rainey's statement was made. Clearly, if the psychologist had been present when Miller replied to Rainey's request for a coffee break, the psychologist's testimony as to what he/she heard Rainey say (or not say) would have been relevant and would not have been hearsay because both the act of the making of a statement and the content thereof were the essential elements of the offense of which Rainey was charged, not the truth or falsity of the statement. Furthermore, the witness might have been able to shed light upon the context in which Rainey's later statement to Crase was made. Whether the statement that was made was a threat of violence against a corrections officer (the precise charge made against Rainey), or was merely a vocal act of frustration depends upon the context in which it was spoken as to which the psychologist may or may not have cogent knowledge.

The Director correctly relies the case of *Alexander v. McCotter*, 775 F.2d. 595, 602 (5th Cir. 1985) wherein the Court iterates that "We noted in Cockrell[21] that complaints based upon uncalled witnesses were not favored because the presentation of witness testimony is essentially strategy and that speculations as to what these witnesses would have testified is too uncertain. See also *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). In order for the appellant to demonstrate the requisite Strickland prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial. See *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981); see also *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir.), cert. denied, 469 U.S. 1041, 105 S. Ct. 524, 83 L. Ed. 2d 412 (1984) (petitioner failed to meet his burden of

---

[21] *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983), cert. denied, 467 U.S. 1251, 104 S. Ct. 3534, 82 L. Ed. 2d 839 (1984).

showing that uncalled witnesses would have testified favorably to the petitioner's case)."

I find that Rainey has neither shown nor alleged with specificity what the psychologist would have testified to had she been called, other than that she may have heard a conversation between Rainey and Captain Miller which conversation may or may not have related to the Rainey's later statement to Sgt. Crase. I conclude that the hearing officer erred in ruling that the psychologist's testimony would have been hearsay, but I find that the hearing officer could have reasonably concluded the testimony was irrelevant and refused to call the psychologist for that reason. Finally, I conclude that Rainey has not established that he was prejudiced by the failure of the hearing officer to call the psychologist to testify.

Recommendation

Bearing in mind that Congress, in enacting the AEDPA, expressly and purposely limited the scope of federal court review of state court criminal proceedings, and that the Supreme Court has likewise done so with respect to limitations on federal court review of prison disciplinary matters, and notwithstanding my own concerns about the manner of the conduct of Rainey's disciplinary hearing by the hearing officer and the absence of context in which Rainey's statement was made, I am constrained to recommend to the District Court that Rainey's petition for writ of habeas corpus be DENIED because the disciplinary decision is supported by **some** evidence within the meaning and scope of the Supreme Court's decision in *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1985) and is not so devoid of evidentiary support as to be arbitrary.

Standard Instruction to Litigants

A copy of this report containing findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report,

findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996

It is so ORDERED, this 16th day of April, 2014.

*Robert K. Roach*
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE

15